**DONZE LAKE DEVELOPMENT CORPORATION, INC., a Missouri Corporation, Xavier F. Grither and Norma T. Grither, his wife, and Alvin C. Donze and Lily Mae Donze, his wife, Plaintiffs-Respondents,**

v.

**Clarence HOLLIDAY and Doris Holliday et ux. and et al., Defendants-Appellants.**

**No. 39845.**

Missouri Court of Appeals, Eastern District, Division One.

Oct. 2, 1979.

---

Limbaugh, Limbaugh & Russell, Wm. L. Syler, Jr., Cape Girardeau, for defendants-appellants.

Claude C. Knight, St. Charles, for plaintiffs-respondents.

SMITH, Judge.

Defendants appeal from the judgment of the trial court quieting title in plaintiffs to a twenty plus acre tract of land in Ste. Genevieve County. We affirm.

Defendants' initial point is that their "paper" title was better than plaintiffs' and the trial court erred in finding the contrary. At the beginning of the trial, the parties and the court engaged in a lengthy colloquy to stipulate to certain matters. Included in the stipulation were the respective chains of title of each of the parties and the legal description of the property. The following also ensued:

"Mr. McIlrath [defendants' attorney]: Yes: comes to that, who exercises control over. Its purely a question after that. The Court: Whether or not your people have acquired it by adverse possession is that it boils down to?

Mr. McIlrath: Yes."

Defendants contend the stipulation reached only to the links in the chains of title and not to the strength of those links. We believe, however, that the above statements by defense counsel were a concession that plaintiffs' title was the better title and that defendants' right to the property depended on their being able to establish adverse possession. Such a judicial admission obviates the need for further proof of the admitted fact. *Young v. Frozen Foods Express, Inc.*, 444 S.W.2d 35 (Mo.App.1969).

In addition the record before us fully supports the trial court's finding. Plaintiffs' chain of title originates with a Spanish land grant in 1796, of 7056 arpens (6002.6 acres) to a Madame Villars, head of a family. This grant was supported by a certified survey by the Surveyor General of Upper Louisiana in 1799. In 1805 the Con-

gress passed an act to secure to persons who had received land grants within the Louisiana territory, all the rights which had been acquired by them under the dominion of France or Spain. 2 Stat. 324. Under the provision which applied to Madame Villars, such persons "shall be confirmed in their claims to such lands in the same manner as if their titles had been completed." Subsequently supplements to this act were passed. 2 Stat. 391, 2 Stat. 440, 2 Stat. 748. Proceedings were begun in 1806 by Madame Villars to have her claim confirmed by a board of commissioners appointed for that purpose. This was ultimately accomplished in 1836 by Act of Congress which approved the confirmation recommendation of the board. 5 Stat. 126. *See also* 4 Stat. 565, 4 Stat. 661.

In 1811, the Congress provided for survey of public lands in the Louisiana Territory and provided for sale of the public lands to the highest bidder except for section 16 of each township which was reserved for "support of schools."[1] 2 Stat. 662. In 1820 the Congress enacted the Admission Act for the State of Missouri and therein granted to the State "[t]hat section numbered sixteen in every township, and when such section has been sold, *or otherwise disposed of*, other lands equivalent thereto  .   .   . for the use of schools." (Emphasis supplied) 3 Stat. 545. The land in dispute is located in Sec. 16. Defendants trace their chain of title to patents granted by the State in 1907 and 1912 to T. J. Moss Tie Company—defendants' predecessor in title.

In *Glasgow v. Baker*, 128 U.S. 560, 9 S.Ct. 154, 32 L.Ed. 513 (1888) the Supreme Court, in dealing with a similar problem arising under an act in 1812 (2 Stat. 748), held that the acts of Congress providing for confirmation of titles acquired prior to the Louisiana Purchase in 1803, divested the United States of title to those lands at the time of those acts. The subsequent grants to the State of Missouri of section 16 were invalid as to that land covered by confirmable grants because the United States had no title to convey. *See also Stoddard et al. v.*

*Chambers,* 2 How. 284, 43 U.S. 284, 11 L.Ed. 269 (1844); *Bissell v. Penrose,* 8 How. 317, 49 U.S. 317, 12 L.Ed. 1095 (1850); *Smith v. United States,* 10 Pet. 326, 35 U.S. 326, 9 L.Ed. 442 (1836); and *United States v. Clarke,* 8 Pet. 436, 33 U.S. 436, 8 L.Ed. 1001 (1834). Obviously, the State could not transfer title or ownership which it did not have. Plaintiffs' title, originating from the Villars grant, is superior to defendants' title arising from the Moss Tie patent. In their brief, defendants, while conceding the validity of the Villars grant and its confirmation, refer to an exhibit which they contend casts doubt upon the confirmation of a portion of the Spanish grant. From the exposition set forth in the brief, it appears that the exhibit refers to a private survey made nine years after the confirmation of the Villars grant. We do not understand nor do defendants explain how such a survey could affect the confirmed grant. At any rate, if a copy of the exhibit is before us it is so illegible that we are unable to determine what it is or what it says. We cannot base a conclusion contrary to that reached by the trial court upon a document which is either not before us or is so poorly copied that it is illegible. We find no error in the trial court's finding on the better title.

■ Defendants' next point is that because they had better paper title, the trial court erred in placing the burden of proof of adverse possession upon them. Inasmuch as we have upheld the trial court's finding that plaintiffs had the better title there is obviously no merit to this contention. Inferentially defendants contend the evidence supported their claim of adverse possession. The evidence does not establish the requisite continuing adverse possession and the trial court's finding in this regard is fully supported by the evidence.

■ Defendants' final point is that the trial court erred in admitting the testimony of plaintiffs' surveyor because he did not begin his survey at an established government monument. We have difficulty understanding what prejudice arose from

---

1. Other reservations were also made but they are not pertinent to this case.

this claimed error inasmuch as the description of the property was stipulated to. Further, the defendants' surveyor compared the survey he prepared with that of plaintiffs' surveyor and indicated they appeared to show the same area in dispute. Because we have not been favored with these exhibits, we are unable to determine whether any conflict exists in the surveys. We presume that the trial court found no discrepancies of moment. We find no prejudical error in the admission of this testimony.

Judgment affirmed.

SNYDER, P. J., and PUDLOWSKI, J., concur.